UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Maritza Angeles, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>    - against -<br><br>BlueTriton Brands, Inc.,<br><br>       Defendant | 1:21-cv-07255<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. BlueTriton Brands, Inc. ("defendant") manufactures, imports, packages, labels, markets, and sells sparkling mineral water with added carbon dioxide purporting to have a lemon taste from a non-de minimis amount of lemon ingredients, identified as "*S. Pellegrino Essenza – Lemon & Lemon Zest,*" under the San Pellegrino brand ("Product").

2. In the last five years, sparkling water sales have increased over 40 percent, with Americans consuming 170 million gallons each year.[1]

3. Defendant markets the Product to the many consumers who have cut back on sugary carbonated soft drinks (CSD) and fruit juices, due to growing awareness of sugar's adverse health effects.[2]

4. "Flavored water is more interesting than plain water but also allows consumers to avoid the added sugars and calories present in other carbonates and juices."

---

[1] Sheila Marikar, The Seltzer Bubble, New York Times, July 13, 2019.
[2] Rebekah Schouten, Why is sparkling water so big right now?, Food Business News, Mar. 10, 2021; Margaret Malochleb, Riding the Wave of Flavored Waters, IFT.org, Sept. 1, 2019; Barbara Harfmann, Bottled Water Bubbles Over with Growth, Beverage Industry, Oct. 8, 2019.

1

5.      Sparkling waters with real fruit ingredients are available to consumers from companies like Spindrift (left), which compete with defendant's Product (right).



6.      Consumers prefer foods and beverages which get their taste from food ingredients instead of added flavor, because this is perceived as more natural, less processed, and not made with additives or solvents that are used even in making "natural flavors."

I.      **REPRESENTATIONS GIVE IMPRESSION PRODUCT HAS MORE LEMON THAN IT DOES**

7.      Federal and identical state regulations prohibit false and deceptive practices with respect to labeling food and beverages.

8.      These requirements apply to the labeling of the food items and the packaging it is sold in. 21 C.F.R. § 101.22; 21 U.S.C. § 343(d); New York Agriculture & Markets Law ("AGM"), Article 17 and 1 NYCRR.

9.      Defendant's representations violate 21 U.S.C. § 343(a)(1) and corresponding state

law, which deem a food misbranded when (1) the label contains statement that are "false or misleading" and (2) the container is made or formed to be misleading.

10. Thus, a violation of federal food labeling laws is an independent violation of New York law.

11. Defendant's packaging and labeling misleads consumers as to the relative amount and quantity of lemon ingredients.

12. The Product's representations include, "S. Pellegrino Essenza," "San Pellegrino Terme – 1899", "Lemon & Lemon Zest," "Flavored Mineral Water with Natural CO2 Added," drawings of fresh full and cut lemons, lemon peels and leaves from the lemon plant, in a bottle covered in yellow cellophane.



3

13. Consumers will expect the Product's lemon taste is provided by lemon ingredients and have an appreciable amount of lemon.

14. An appreciable amount of lemon is an amount sufficient so that all the lemon taste comes from lemons.

15. Lemon ingredients are considered "food" because they are a source of nutritive value.

16. Extractives, oils, and essences from lemons, which are concentrated, compounded, and synthesized, are considered "flavor," and do not provide nutritive value. *See* 21 C.F.R. § 101.22(a)(3).

17. The packaging and labeling are misleading because they give consumers the impression it contains a greater amount of lemon ingredients than it does.

   A. Misleading Container Wrapped in Yellow Cellophane

18. Companies have often used deceptive packaging techniques to mislead consumers as to the quantity and/or quality of the contents.

19. Misleading containers that are "made, formed, or filled as to be misleading" are prohibited under federal and identical state food labeling regulations. 21 U.S.C. § 343(d).

20. While this provision is often applied to "slack-fill" – the empty space within a product that gives consumers the impression they are receiving more than they are – its application is not limited to slack-fill.

21. These situations include packaging and containers which are contrived to give the purchaser a false impression as to the quantity, quality, size, kind, or origin of the food.

22. Examples of these practices include (1) bottles made of thickened glass for olives, (2) preserved whole cherries, and strawberries, especially designed to magnify the size of the individual olive or fruit and to conceal, in the case of olives, the interstices between each, and (3)

4

false bottoms within boxes.[3]

23. Other examples of deceptive packaging include cellophane "windows" which only show the part of the product containing more valuable ingredients, so that consumers think the part not covered by cellophane also contains those ingredients.

24. Another way for packaging to mislead is by placing higher-grade products on top of the pack and the inferior beneath.

25. An (in)famous type of deception was highlighted in a 1933 traveling exhibit, prepared by FDA's Chief Education Officer, Ruth deForest Lamb, and Chief Inspector, George Larrick.

26. The purpose of this exhibit was to bring attention to the numerous ways food packaging and labeling was misleading and injurious to consumers.

27. Dubbed the "American Chamber of Horrors," it spurred Congress to pass legislation which attempted to curb these abuses.

28. One of the examples involved the packaging of egg noodles, which have greater nutritive value than regular noodles because they contained more costly egg ingredients.

---

[3] John C. Martin, "Section 403 (d)-Containers So Made, Formed or Filled as to Be Misleading." Food, Drug, Cosmetic Law Journal 8.10 (1953): 663-672.



- Labeled "Plain Noodles" But Contain Enough Egg To Make Them Look Like Egg Noodles (Left)
- These Are Plain Noodles Honestly Packaged (Center)
- Labeled "Plain Noodles" But Yellow Wrapper Makes Them Look Like Egg Noodles (Right)[4]

29. By coloring the cellophane yellow, the manufacturer was able to "pass off" the regular noodles for higher-quality egg noodles, where the consumer did not scrutinize the fine print.

30. Defendant's clear bottle is wrapped in yellow cellophane, which tricks the consumer so that the contents of the Product appear yellow, as it would be if it had an appreciable amount of lemon ingredients.

B. Product Lacks Appreciable Amount of Lemon Ingredients

31. Despite the yellow-tinged bottle and the promises of "Lemon & Lemon Zest," the Product lacks an appreciable amount of lemon ingredients.

---

[4] Pictures from this era were not able to capture the color of the wrapper due to technology and preservation issues.

32. The front label attempts a "disclaimer" at the base of the bottle, through identifying the Product as "Flavored Mineral Water."



33. This statement is inconspicuous and in a color which blends into the yellow cellophane wrapper.

34. Even if consumers noticed this small print disclosure *after* seeing the other representations, they would not know this meant the Product did not contain an appreciable amount of lemon ingredients.

35. Federal and state regulations require a product to disclose the source of its characterizing flavor, i.e., real lemons, lemon *flavor* from lemons – essences, oils, extractives obtained after synthesizing lemons in a laboratory, lemon flavor from natural sources other than lemons, i.e., oranges, or artificial sources.

36. By using the word "Flavored" preceding "Mineral Water," consumers will only know the Product has a lemon taste.

37. However, the front label is required to disclose the source of the lemon flavor in the manner prescribed by federal and state regulations, to prevent consumers from being misled.

38. For instance, if the Product's taste is due to natural flavor derived from lemons and an amount of lemon ingredient insufficient to independently characterize the food, or the food contains no lemons, the name of the flavor should be preceded by the word "natural" and followed by "flavored," or the word "flavored" should be preceded by the name of the flavor. 21 C.F.R. § 101.22(i)(1)(i).

39. The Product does not contain any appreciable amount of lemon ingredient, as revealed by the ingredient list, which lists "CARBONATED MINERAL WATER, NATURAL FLAVORS NATURAL FLAVORS."



40. According to flavor expert Bob Holmes, if a product provided "all the flavor depth" of the named fruit ingredient, i.e., lemon, the ingredients listed would include lemon oil, lemon extract or lemon juice, instead of "Natural Flavors."

41. The Product's "Natural Flavors" instead consists of flavor compounds from some lemon, which imitates the taste provided by lemons.

42. These compounds are cheaper than using only real lemons, and more concentrated, so less lemon needs to be used.

43. This was or would be confirmed by lab testing which observed or would observe an absence of the spectrum of flavor compounds associated with lemons.

44. Lemon oil gets its flavor from alcohols, aldehydes, esters, ethers, terpenes, hydrocarbons, and ketones.

45. These compounds give lemons their characteristic sour taste, which is complemented

by sweetness and tartness.

46. However, the "lemon" taste is mainly from added limonene and citral, through the isomers neral and geranial, and it lacks the balance of other essential compounds.

47. These include beta-pinene, beta-myrcene and γ-terpinene, which provide the "woody" and "piney" notes of real lemons.

48. Consumers also value lemons for their nutritive purposes.

49. Lemons are high in vitamin C, a primary antioxidant which protects cells from damaging free radicals.

50. The polyphenol antioxidants in lemons are linked with reducing weight gain.

51. The Product lacks an authentic lemon taste because though it may contain some lemon compounds, it lacks enough, if any, of the complementary flavor compounds in real lemons.

52. Even if Plaintiff scrutinized all elements of the packaging and labeling, it would not cure the misrepresentations.

53. The additional cost of using more lemon ingredients would be insignificant, and not more expensive than the costs for yellow cellophane.

54. Given that the Product is sold under the esteemed *San Pellegrino* brand, and imported from Italy, Plaintiff had no reason to expect the Product lacked the relative amount and type of lemon ingredients.

## II.   CONCLUSION

55. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

56. The value of the Product that plaintiff purchased was materially less than its value as

represented by defendant.

57. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

58. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

59. The Product is sold for a price premium compared to other similar products, no less than $2.49 for 16.9 OZ, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

60. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

61. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

62. Plaintiff Maritza Angeles is a citizen of New York.

63. Defendant BlueTriton Brands, Inc. is a Delaware corporation with a principal place of business in Stamford, Fairfield County, Connecticut

64. The parties are citizens of different states.

65. Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

## Parties

66. Plaintiff Maritza Angeles is a citizen of New York, New York County, New York.

67. Defendant BlueTriton Brands, Inc., is a Delaware corporation with a principal place of business in Stamford, Connecticut, Fairfield County.

68. Defendant is one of the largest sellers of bottled water products in the world.

69. Defendant sells spring, sparkling and flavored water under numerous brands nationwide.

70. The Product is sold at thousands of retail locations – grocery stores, drug stores, big box stores, convenience stores, etc. – and online.

71. Plaintiff bought the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Target, 40 W 225th St #50, Bronx, NY 10463, between July and August 2021, among other times.

72. Plaintiff bought the Product because she expected it would contain more lemon ingredients than it did, instead of a natural flavor that simulated lemon taste.

73. Plaintiff wanted more than a "lemon taste," which she nevertheless failed to receive, due to the relatively unbalanced amount of compounds.

74. Plaintiff saw the yellow tinted bottle which made the contents appear yellow and believed this was because the Product contained a greater amount of lemon ingredients.

75. Plaintiff bought the Product at or exceeding the above-referenced price.

76. Plaintiff relied on the representations identified here.

77. Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

78. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

79. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

11

80. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

## Class Allegations

81. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of Iowa and Arkansas who purchased the Product during the statutes of limitations for each cause of action alleged.[5]

82. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

83. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

84. Plaintiff is an adequate representative because her interests do not conflict with other members.

85. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

86. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

87. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

---

[5] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: Iowa (Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 et seq.); Arkansas (Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et. seq.).

88. Plaintiff seeks class-wide injunctive relief because the practices continue.

## New York General Business Law ("GBL") §§ 349 & 350

### (Consumer Protection Statute)

89. Plaintiff incorporates by reference all preceding paragraphs.

90. Plaintiff and class members desired to purchase a product that contained more of the named fruit ingredient than it did.

91. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

92. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

93. Plaintiff relied on the representations.

94. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Violation of State Consumer Fraud Acts

### (On Behalf of the Consumer Fraud Multi-State Class)

95. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

96. Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

97. As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

98. In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

99. The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it had more of the named fruit ingredient than it did.

100. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

101. This duty is based on Defendant's outsized role in the market for this type of Product.

102. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

103. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

104. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

105. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

106. Defendant had a duty to truthfully represent the Product, which it breached.

107. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodian of the San Pellegrino brand of imported sparkling water.

108. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a nationally recognized and trusted brand.

109. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

110. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

111. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it had more of the named fruit ingredient than it did

112. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

### Unjust Enrichment

113. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and

representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   August 29, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com